UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANNABELLE V.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C25-2045-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff appeals the denial of an application for Supplemental Security Income. They contend that the ALJ erred by improperly evaluating the medical opinions of Tasymn Bowes Psy.D.; Amber Donaldson, MA, LMHC; and Francine Buckner, ARNP. Dkt. 18. As discussed below, the Court **REVERSES** and **VACATES** the Commissioner's final decision in its entirety and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 24 years old, completed tenth grade, and has no past relevant work. Tr. 66, 85, 133. In July 2022, they applied for benefits, alleging disability as of January 15, 2018. Tr. 134. Their applications were denied initially and on reconsideration. Tr. 158–62, 164–66. The ALJ conducted hearings in October 2023, March 2024, July 2024, and August 2024. Tr 53–

132. The ALJ determined that plaintiff has not engaged in substantial gainful activity since the application date. Tr. 26. The ALJ found that plaintiff has the following severe impairments: chronic fatigue syndrome ("CTS"); postural orthostatic tachycardia syndrome ("POTS"); depression; anxiety; eating disorder; and post-traumatic stress disorder ("PTSD"). Tr. 26–27. The ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment. Tr. 27–29. The ALJ assessed plaintiff with the residual functional capacity ("RFC") to perform light work but with additional postural and physical limitations, as well as a limitation to simple and routine tasks. Tr. 29. Considering plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 37–40. The ALJ thus concluded that plaintiff is not disabled. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–6.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

The Court finds that the ALJ failed to support with substantial evidence her decision to reject the medical opinions of Dr. Bowes, LMHC Donaldson, and ARNP Buckner. These errors were not harmless because they affect the proper evaluation of plaintiff's testimony, the medical record, and RFC, and because the opinions, accepted as true, would support a finding of disability.

**1. Dr. Bowes**

In August 2022, Dr. Bowes provided a psychological/psychiatric evaluation of plaintiff that was based upon a clinical interview taken over the phone based on then-in-effect restrictions related to COVID-19. Tr. 1034–39. Dr. Bowes diagnosed plaintiff with persistent depressive disorder, currently major depression, moderate; unspecified anxiety disorder (Panic, GAD, PTSD symptoms), and unspecified neurocognitive disorder (secondary to POTS). Tr. 1037. Dr. Bowes opined that plaintiff had a severe limitation (i.e., no ability at all) in understanding, remembering, and persisting in tasks by following detailed instructions; marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual, communicating

and performing effectively in a work setting, and completing a normal work day and work week without interruptions from psychologically based symptoms; moderate limitations in 8 of 13 domains; and mild or no limitation in being aware of normal hazards and taking appropriate precautions. Tr. 1037–38. Considering the combined impact of all diagnosed mental impairments, Dr. Bowes assessed plaintiff with an overall severity rating of marked. Tr. 1038. Dr. Bowes found that plaintiff needs a protective payee due to cognitive functioning difficulties. *Id.* Among other measures, Dr. Bowes recommended ongoing case management, mental health counseling, and regular psychiatric evaluations and psychotropics. *Id.* Dr. Bowes administered a mental status exam and indicated that plaintiff's thought process and content was not within normal limits, noting, "Thought process was scattered at times – mildly slowed." Tr. 1039. Dr. Bowes also found that plaintiff's concentration was not within normal limits, noting, "Distracted – needed to have questions repeated several times etc." Tr. 1040.

The ALJ found that the marked and severe limitations assessed by Dr. Bowes were not supported by the mental status examination because "[w]hile the claimant presented with a dysphoric mood with a mildly slow or scattered thought process at times and sometimes needed redirection or repetition of questions, they were cooperative and fully oriented with appropriate affect, intact recall (3/3), and normal speech, thought content, perception, fund of knowledge, abstract thinking, insight, and judgment." Tr. 34. The ALJ also found that Dr. Bowes's assessment was inconsistent with the mental status examinations, citing a long string citation to 42 specific records, *id.* (citing Tr. 1116, 1461, 1480, 1485, 1493, 1498, 1503, 1512, 1516, 1522, 1557, 1910, 2229, 2262, 2268–69, 2276, 2795, 2820, 2827, 2845, 2853, 2873, 2890, 2936, 3372–73, 3441, 3569, 3741, 3826, 3842–43, 3909–10, 3930, 3971–72, 3985–86, 4020–21, 4035–36, 4102–03, 4147, 4296, 4371, 4546, 4571), and plaintiff's "ability to engage in activities of daily

living, including independent self-care, household chores, and shopping," citing broadly to 6 different sources, *id.* (citing Tr. 393–402, 403–11, 1556, 3332–45, 4576–77, 4589–93). More than 20% of the cited records (9 of 42) do not, however, support the ALJ's proposition that they are indicative of no more than moderate limitations rather than of Dr. Bowes's more restrictive marked and severe limitations. *See* Tr. 1461, 1480, 1493, 1498, 1503, 1516, 1557, 2890, 3909–10. Several more reference lack the important context that the mental status exams were administered during an in-patient psychiatric stay. *See* Tr. 3741, 3985–86, 4020–21, 4035–36, 4102–03. In none of the records do service providers opine that the mental status exams were inconsistent with plaintiff's reported symptoms or their severity. Moreover, the ALJ's reference to plaintiff's daily activities does not, without more extensive explanation, appear to support only moderate limitations that would not interfere with performing full-time work. *See* Tr. 393–402, 403–11, 1556, 3332–45, 4576–77, 4589–93.

First, the ALJ's conclusion that normal mental status exams undermined Dr. Bowes's opinion is contradicted by sources within the ALJ's long string citation. For example, the ALJ offered no discussion of a cited mental status exam that occurred during plaintiff's month-long in-patient hospitalization in 2023 that observed distractible cognitive function, a thought process with perseveration related to mood or anxiety treatment, anxious perseverations, cognitive distortions, obsessions, limited insight, and limited judgment. *Compare* Tr. 34 *with* Tr. 3909–10. Treatment notes for the mental status exam concluded that plaintiff required continued in-patient treatment for the following reasons: cooperative with treatment only in a highly structured and specialized treatment setting; need for mood and anxiety specialized treatment; medical concerns necessitating labs and ongoing physician careful assessments and treatments related to need for behavioral change; patient's external supports need ongoing preparation for when patient is

ready for discharge or family support is unavailable; needs structure and assistance to manage functional impairment related to vocational, academic, social, family functioning, hygiene/grooming, instrumental ADLs, sleep, or financial stability; inability to function at a lower level of care or substantial risk of deterioration if prematurely discharged; and lack of sufficient motivation or relief from thoughts and behaviors or has demonstrated inability to ask for help or interrupt behaviors. Tr. 3911. Similarly, the ALJ referred to a March 2023 online mental status examination of plaintiff as unremarkable when the examination noted plaintiff's short-term memory impairment, distracted attention, hallucinations regarding time, derealization, depersonalization, and that plaintiff "might have dissociative identity disorder." Tr. 1498. Moreover, even with mental status exams that the ALJ correctly referred to as "normal," there are strong indications that the underlying mental health issues suggested more than moderate limitations, such as in an August 2023 consultation in which plaintiff's therapist noted that plaintiff had not eaten or slept for 24 hours, felt that "there are flies multiplying in her apartment and there are fly larva growing in her bathtub," and needed help to process that "bugs are not posing a threat." Tr. 1493.

Second, the ALJ referred to plaintiff's daily activities of independent self-care, household chores, and shopping as undermining more than moderate limitations without adequately explaining how the records support that conclusion. Tr. 34. For example, the ALJ referred to home care workers arriving regularly to assist with plaintiff's household tasks as evidence that plaintiff could, without such assistance, work fulltime. *See* Tr. 3333–45. These notes appear to show far more dependence than they do independence, with care workers providing standby assistance to allow plaintiff to walk around the apartment, putting laundry away, cooking dinner for the evening and creating leftovers for future dinners, helping with 16 of 16 activities of daily

living on certain days, and reporting that plaintiff forgets to eat and what to do, and displays low energy and dizziness. *Id.* Similarly, that plaintiff can "perform basic ADLs (ambulation, feeding, dressing, personal hygiene, toileting)" when asymptomatic does not render superfluous her primary care provider's observation that "during flares of POTS which may last up to one week at a time, [plaintiff] does require assistance with food preparation and even mobilizing within their home," which led the provider to conclude that plaintiff "requires assistance with transportation, housekeeping and shopping, management of medications, and management of appointments communication with [their] medical team." Tr. 4576. The ALJ specifically cited to medical notes referring to plaintiff enjoying her cat and playing with computers as evidence of her functionality, Tr. 34 (citing Tr. 1556), but also cited to records indicating that home care workers, in addition to taking out the trash, trying to take plaintiff outside regularly, and cleaning the bathroom, kitchen, and dishes, also cleaned the litterbox and sought to build an outdoor area for the cat. Tr. 4590–93.

The ALJ also discounted Dr. Bowes opinion because DSHS evaluations are conducted to determine eligibility for State benefits rather than for treatment; the opinion provided minimal narrative explanation for her specific limitations; Dr. Bowes was unable to observe plaintiff's behavior as it was a telephone appointment; Dr. Bowes did not have the benefit of reviewing any medical reports from the record and thus did not have a longitudinal view; and the opinion was based on plaintiff's subjective reports, which the ALJ found to be unreliable. Tr. 34. Such concerns cannot be accepted as substantial evidence when the ALJ's decision fails to reconcile conflicting evidence on which it relies, fails to explain why the medical notes that appear to support greater than moderate limitations should be discounted, and suggests, contrary to the reports of treating and examining doctors, psychologists, and social workers, that plaintiff's

testimony should be discounted because non-examining agency evaluators have read the record and conclude otherwise.

The Commissioner suggests that the ALJ's rejection of Dr. Bowes's opinion can be affirmed on the basis of supportability alone. The Court disagrees. The ALJ found that Dr. Bowes's opinion was unsupportable primarily on the basis of a contemporaneous "normal" mental status exam. Tr. 34. The ALJ failed, however, to explain why "normal" mental status exams undermine the reported severity of plaintiff's symptomatic CTS, POTS, depression, anxiety, eating disorder, and PTSD given neither Dr. Bowes nor any other treating or examining provider reached such a conclusion. Moreover, as discussed above, not only have treating and examining doctors found such mental status exams consistent with plaintiff's reported symptoms, but also many of the reported mental status exams demonstrate either equivocal or substantially limiting mental status exams. *See* Tr. 1461, 1480, 1493, 1498, 1503, 1516, 1557, 2890, 3909–10.

The Court finds that the ALJ failed to support her decision to reject Dr. Bowes's opinion with substantial evidence.

**2. LMHC Donaldson**

In August 2024, LMHC Donaldson submitted a letter providing her clinical observations about plaintiff's level of functioning. Tr. 2302–03. LMHC Donaldson supported this letter with an August 2024 medical RFC assessment. Tr. 4594–97. LMHC Donaldson noted that plaintiff had been a client since November 2023, when she was discharged from a month of in-patient, psychiatric treatment at Pathlight Mood and Anxiety Center. Tr. 2302. LMHC Donaldson stated that plaintiff's current and longstanding symptoms included daily anxiety, panic attacks, depressed mood, a history of suicidal ideation, dissociative episodes, depersonalization, extreme

fatigue, low motivation, poor follow-through of tasks due to emotional and physical burnout, intrusive and persistent negative thoughts and worries about health, somatization, rumination about physical symptoms and fears about having a medical emergency or dying (which impacted sleep, ADLs, and ability to focus on the present moment), flashbacks of traumatic childhood experiences, specific triggers (including fears about being around males) and efforts to avoid experiences, people and situations that remind them about the past trauma, hypervigilance, exaggerated startle response, rigidity and tension daily in muscles (which exacerbates medical chronic pain symptoms), distractibility, short-term memory difficulty, inattention, difficulty with task prioritization, easily losing her train of thought mid-sentence, difficulty with sustained focus or attentions, and periods of hyper fixation on a task without awareness to impact on physical needs or obligations mixed with periods of task paralysis. Tr. 2302. LMHC Donaldson noted that plaintiff relies upon their mother for help with scheduling and keeping track of medical appointments, relaying and understanding medical concerns, helping her to understand and follow through on medical recommendations, and transportation to and from medical appointments because panic attacks keep plaintiff from driving or taking public transportation. *Id.* LMHC Donaldson concluded that plaintiff's current and longstanding mental and physical health symptoms would severely impact their ability to sustaining employment and that pursuing employment at this time could lead to mental health decompensation. Tr. 2303. LMHC Donaldson opined that plaintiff had extreme or marked limitations in numerous psychological domains related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 4595–97. LMHC Donaldson thus concluded that plaintiff's impairments would substantially interfere with their ability to work on a regular and sustained

basis at least 20% of the time, and that plaintiff would miss work 25 to 30 days per month due to their mental impairments. Tr. 4597.

The ALJ discounted LMHC Donaldson's opinions because they were inconsistent with grossly normal mental status examinations, citing the same extensive string citation as with Dr. Bowes's opinion (save with a single omission), as well as out of proportion with the medical history and plaintiff's documented activities, citing the same string citation as with Dr. Bowes's opinion. Tr. 35. In addition, the ALJ noted that LMHC Donaldson included physical symptoms in her assessment, not just mental, which were outside of her expertise as a mental health counselor and admitted that plaintiff's symptoms can be better managed with consistency. *Id.* The ALJ's reasons for discounting LMHC Donaldson's opinions are not supported by substantial evidence.

First, as discussed with respect to Dr. Bowes's opinion, the ALJ's assertion that LMHC Donaldson's assessment of plaintiff's mental health symptoms is inconsistent with normal mental status exams, the medical record, and plaintiff's daily activities is not borne out by an examination of the records cited. Second, there can be no reasonable inference that LMHC Donaldson was suggesting that, in the absence of physical symptoms or in the presence of better mental health management, the extensive list of mental health symptoms observed by the counselor would cease to be debilitating.

The Court finds that the ALJ failed to support her decision to reject LMHC Donaldson's opinions with substantial evidence.

**3. ARNP Buckner**

In August 2024, ARNP Buckner opined that plaintiff suffers from multiple medical and mental health diagnoses that negatively affect her physical, social, and cognitive abilities. Tr.

4598. ARNP Buckner observed that in appointments, plaintiff is often unable to communicate clearly with her, and that their short and long-term memory is impaired, as shown by an inability to answer straightforward questions about medical history or current psychological or physical state. *Id.* ARNP Buckner set forth a timeline of plaintiff's psychological and physical disabilities, starting at age 1 and going to age 22, and currently had weekly home physical therapy and bi-weekly telehealth mental health therapy, was unable to drive, work, or take public transportation, takes multiple medications, and has state approval for 39 hours of caretaking per month. Tr. 4600. Like LMHC Donaldson, ARNP Buckner opined that plaintiff has extreme or marked limitations in multiple domains related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 4602–04. ARNP Buckner thus concluded that plaintiff's impairments would substantially interfere with their ability to work on a regular and sustained basis at least 20% of the time, and that plaintiff would miss most or all days of work per month due to their mental impairments. Tr. 4604.

The ALJ rejected ARNP Buckner's opinions essentially for the same reasons, and with reference to the same record citations, as she did the opinions of Dr. Bowes and LMHC Donaldson. Tr. 36. As discussed earlier, the Court rejects those reasons as unsupported by substantial evidence.

**4. Harmful Error and Remand for Further Administrative Proceedings**

The Court finds that the ALJ's misevaluation of the opinions of Dr. Bowes, Ms. Donaldson, and ARNP Buckner was harmful because that error affects all aspects of this case, from the evaluation of plaintiff's testimony and the medical evidence to the assessment of RFC and determination of disability. The ALJ cited no treating or examining source that suggested plaintiff exaggerated her symptoms, was malingering, or attempted to avoid treatment of her

mental and physical conditions within a record that spans over 4,600 pages. The ALJ nonetheless stated: "As discussed above, whenever a provider opined that the [plaintiff's] conditions were maintained, they would seek out a new provider." Tr. 33. There is, however, no discussion whatsoever that explains this characterization of plaintiff's treatment history, nor is there any citation to evidence that would justify the conclusion that plaintiff has been engaging in some form of evasive behavior.

The Court clarifies that the ALJ's decision vacated in its entirety for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **VACATED** in its entirety and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should provide an opportunity for plaintiff to supplement and update the record, hold a new hearing, and issue a decision that engages anew in a five-step evaluation.

DATED this 31st day of July, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge